246 P.3d 796 (2011)
STATE of Washington, Respondent,
v.
Terrance Jon IRBY, Petitioner.
No. 82665-0.
Supreme Court of Washington, En Banc.
Argued May 13, 2010.
Decided January 27, 2011.
*798 Erik Pedersen, Skagit County Prosecutor's Office, Mount Vernon, WA, for Petitioner.
David Bruce Koch, Nielsen Broman & Koch PLLC, Seattle, WA, for Respondent.
ALEXANDER, J.
¶ 1 We granted the State's petition for review of a decision of the Court of Appeals to reverse Terrance Irby's convictions of first degree murder with aggravating circumstances, first degree felony murder, and first degree burglary. The Court of Appeals held that the trial court violated Irby's right to be present at trial by conducting a portion of the jury selection process by e-mail in Irby's absence. The State contends that Irby did not have a right to be present at this proceeding and that, even if he did have the right, any violation of the right was harmless. We hold that the trial court violated Irby's rights under the constitutions of the United States and the State of Washington to be present during the entire jury selection process and that the violation was not harmless. Accordingly, we affirm the Court of Appeals.

I. Facts and Procedural History
¶ 2 The Skagit County Prosecuting Attorney's Office charged Irby in Skagit County Superior Court with first degree burglary and first degree murder with aggravating circumstances or, alternatively, first degree felony murder. The charges arose out of the bludgeoning death of James Rock. Shortly before trial, the State and Irby agreed to the trial court's suggestion that neither party needed to attend the first day of jury selection, Tuesday, January 2, 2007. At that time, according to the trial judge, prospective jurors (hereinafter "jurors") would simply be given a juror questionnaire to complete and would take the necessary oath. Both parties were, however, expected to appear and begin the questioning of jurors on the following day. At the time the parties agreed to the schedule proposed by the trial court, there was no suggestion that any jurors might be removed from the panel before questioning took place in open court beginning on January 3.
¶ 3 On January 2, according to the agreed schedule, jurors were sworn and given a questionnaire. After all the jurors submitted filled-out questionnaires, the trial judge sent an e-mail to the prosecuting attorney and Irby's counsel that suggested that certain jurors be removed from the panel. The e-mail, which was sent at 1:02 p.m., read as follows:
I note that 3, 23, 42 and 59 were excused after one week by the Court Administrator.
17 home schools, and 3 weeks is a long time.
77 has a business hardship.
36, 48, 49 and 53 had a parent murdered.
Any thoughts? If we're going to let any go, I'd like to do it today.
Clerk's Papers (CP) at 1279-80.[1] At 1:53 p.m., Irby's trial counsel agreed to the release of all 10 jurors referenced in the trial judge's message. The prosecutor's precise response is not part of the record, but at some point prior to 1:59 p.m., the prosecutor informed the trial court that the State agreed to the release of seven of the jurors identified in the e-mail. The prosecutor did, however, object to the release of three of the four jurors (36, 48, and 49) who indicated on their questionnaires that they had a parent who had been murdered. The trial judge responded with another e-mail to the prosecuting attorney and Irby's counsel indicating that the seven jurors whom the attorneys had jointly agreed to release would be notified that they did not need to appear the following day. The clerk's minutes read: "In chambers not on the record. Counsel stipulate to excusing the following jurors for cause: # 7, 17, 23, 42, 53, 59 & 77." Id. at 1239. The minutes also indicate that Irby *799 was in custody at the time, and there is no indication there or elsewhere in the record before us that Irby was consulted about the dismissal of any of the jurors who had taken the juror's oath.
¶ 4 On the following day, jury selection continued, this time in open court and in Irby's presence. The State and Irby agreed at that time to release juror 36 for cause.[2] Jury selection, which proceeded numerically, ultimately reached juror 37. Thus, of the jurors identified in the judge's initial e-mail, only jurors 7, 17, 23, and 36 had a chance to sit on Irby's jury.
¶ 5 At the conclusion of the trial, the jury found Irby guilty of first degree murder with aggravating circumstances, first degree felony murder, and first degree burglary. Given the first degree murder and first degree burglary convictions, the trial court determined that Irby was a persistent offender and, consequently, sentenced him to life in prison without the possibility of parole. Irby appealed the convictions and sentence to Division One of the Court of Appeals. The State cross-appealed, arguing that the trial court erred by failing to impose a life sentence based on Irby's aggravated first degree murder conviction.[3]
¶ 6 At the Court of Appeals, one of Irby's primary contentions was that the trial court's dismissal of seven potential jurors via the aforementioned e-mail exchange violated his right to be present at all critical stages of trial. See Br. of Appellant at 13-17. He also asserted that this procedure violated his right to a public trial under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution and that the trial court had improperly sentenced him as a persistent offender. Relying on State v. Wilson, 141 Wash.App. 597, 171 P.3d 501 (2007), the Court of Appeals reversed Irby's convictions, holding that the trial court "violated Irby's right to be present and contribute to jury selection." State v. Irby, noted at 147 Wash. App. 1004, slip op. at 5, 2008 WL 4616712 (2008). The Court of Appeals did not address the question of whether the error was harmless, and it did not reach the other issues raised by Irby and the State, including Irby's claim that his right to a public trial was violated. The State then filed a petition for review, which we granted. State v. Irby, 166 Wash.2d 1014, 210 P.3d 1019 (2009).

II. Standard of Review
¶ 7 Whether a defendant's constitutional right to be present has been violated is a question of law, subject to de novo review. Cf. State v. Strode, 167 Wash.2d 222, 225, 217 P.3d 310 (2009) ("Whether a defendant's constitutional right to a public trial has been violated is a question of law, subject to a de novo review on direct appeal.").

III. Analysis
¶ 8 Irby claims that the trial court violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution by conducting a portion of jury selection outside his presence. This court has routinely analyzed alleged violations of the right of a defendant to be present by applying federal due process jurisprudence. See In re Pers. Restraint of Benn, 134 Wash.2d 868, 920, 952 P.2d 116 (1998); In re Pers. Restraint of Lord, 123 Wash.2d 296, 306, 868 P.2d 835 (1994); State v. Rice, 110 Wash.2d 577, 616, 757 P.2d 889 (1988) (adding "see also CONST. art. 1, §§ 3, 22"). Accordingly, we begin our analysis with a discussion of the due process clause of the Fourteenth Amendment.

A. Due Process Clause of the Fourteenth Amendment
¶ 9 A criminal defendant has a fundamental right to be present at all critical stages of a trial. Rushen v. Spain, 464 U.S. 114, 117, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). Although the right to be present is rooted to a large extent in the confrontation clause of the Sixth Amendment to the United States Constitution,[4] the United States Supreme *800 Court has recognized that this right is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). In that vein, the Court has said that a defendant has a right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 78 L.Ed. 674 (1934), overruled in part on other grounds sub nom. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Court went on to indicate, however, that because the relationship between the defendant's presence and his "opportunity to defend" must be "reasonably substantial," a defendant does not have a right to be present when his or her "presence would be useless, or the benefit but a shadow." Id. at 106-07, 54 S.Ct. 330. Thus, it is fair to say that the due process right to be present is not absolute; rather "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence." Id. at 107-08, 54 S.Ct. 330.
¶ 10 The State asserts here that the "e-mail exchange between the [trial] court and counsel [for the State and Irby] regarding excusing potential jurors" was not a "critical stage[ ]" of the trial because it was not substantially related to Irby's "opportunity to defend against the charge." Suppl. Br. of Pet'r at 1, 7, 14. In prior cases, this court has discussed the right of a defendant to be present at various stages of a trial. For instance, in Rice, we held that "[u]nder the Snyder standard," a defendant has a "due process right to be present at the return of his verdict." Rice, 110 Wash.2d at 617, 757 P.2d 889. In another case, Lord, our court determined that a defendant did not have a right to be present at "in-chambers or bench conferences between the court and counsel on legal matters." Lord, 123 Wash.2d at 306, 868 P.2d 835; see also In re Pers. Restraint of Pirtle, 136 Wash.2d 467, 484, 965 P.2d 593 (1998) (no right to be present at "in-chambers conferences between court and counsel" involving "legal matters, such as the wording of jury instructions, or ministerial matters, such as jury sequestration"). Similarly, in Benn, we held that a defendant did not have a right to be present at a hearing on a motion for a continuance. Benn, 134 Wash.2d at 920, 952 P.2d 116.
¶ 11 The State likens the "e-mail exchange" between the trial judge and counsel for the parties to a sidebar or chambers conference, proceedings that our court and other courts have said that a defendant has no due process right to attend. We disagree with the State's analogy to those sorts of proceedings. In our judgment, the e-mail exchange was a portion of the jury selection process. We say that because this novel proceeding did not simply address the general qualifications of 10 potential jurors, but instead tested their fitness to serve as jurors in this particular case.
¶ 12 The fact that jurors were being evaluated individually and dismissed for cause distinguishes this proceeding from other, ostensibly similar proceedings that courts have held a defendant does not have the right to attend. See, e.g., Wright v. State, 688 So.2d 298, 300 (Fla.1996) (distinguishing general qualification of the jury from the qualification of a jury to try a specific case and holding that general qualification process is not a critical stage of the proceedings requiring the defendant's presence); Commonwealth v. Barnoski, 418 Mass. 523, 530, 531, 638 N.E.2d 9 (1994) (distinguishing "preliminary hardship colloqu[y]" from "individual, substantive voir dire"). Indeed, the questionnaire that was given to the jurors after the juror's oath was administered indicated that filling out the questionnaire was "part of the jury selection process," and "designed to elicit information with respect to your qualifications to sit as a juror in this case." CP at 1234 (emphasis added). The subsequent exchange of e-mails resulted in decisions being made, at least in part, on the basis of the questionnaire about the ability of particular jurors to try this specific case. This decision making was clearly a part of the jury selection process, a part that Irby did not agree to miss.
*801 ¶ 13 The State points out that the courtroom was "empty" at the time and that there were "no proceedings on the record." Suppl. Br. of Pet. at 12, 10. What was not happening in the courtroom is beside the point: What ought to have happened there was instead happening in cyberspace. Contrary to the State's claim that no court proceedings took place at the time, the e-mails in question substituted for jury selection. See id. at 6, 10, 14-15.
¶ 14 The question, then, becomes: did Irby have a right to be present at this portion of the jury selection process? The Court of Appeals recognized in Wilson that the due process right to be present "extends to jury voir dire." Wilson, 141 Wash.App. at 604, 171 P.3d 501. We are in full accord with that principle. Indeed, the United States Supreme Court said in Snyder that a defendant's presence at jury selection "bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend" because "it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether." Snyder, 291 U.S. at 106, 54 S.Ct. 330 (citing Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)). The United States Court of Appeals of the District of Columbia Circuit came to the same conclusion in United States v. Gordon, 829 F.2d 119 (1987), where the defendant, at his attorney's request, was absent from the whole of voir dire and never told of his right to attend. The District of Columbia Circuit said, "That Gordon's presence at voir dire was substantially related to his defense is indicated by the fact that he had no opportunity `to give advise [sic] or suggestion[s] ... to ... his lawyers.'" Id. at 124 (most alterations in original) (quoting Snyder, 291 U.S. at 106, 54 S.Ct. 330); see also Commonwealth v. Owens, 414 Mass. 595, 602, 609 N.E.2d 1208 (1993) (defendant "has a right to be present when jurors are being examined in order to aid his counsel in the selection of jurors and in the exercise of his peremptory challenges" (citing Lewis, 146 U.S. at 373, 13 S.Ct. 136)).
¶ 15 In Gomez v. United States, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the United States Supreme Court affirmed that jury selection is "a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present." The court pointed out that it is "the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability." Id. (citations omitted). This right attaches "`"at least from the time when the work of empanelling the jury begins."'" Id. at 873, 109 S.Ct. 2237 (quoting Lewis, 146 U.S. at 374, 13 S.Ct. 136 (internal quotation marks omitted) (quoting Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262 (1884))).
¶ 16 In Irby's case, "the work of empaneling the jury" began on January 2, when jurors were sworn and completed their questionnaires. The work was ongoing when the trial judge e-mailed Irby's attorneys and the prosecutor about potentially dismissing 10 jurors, not only for hardship, but because 4 jurors had parents who had been murdered. As noted above, Irby was not present during this discussion because he was in his jail cell. Furthermore, because the trial judge sent his initial e-mail at 1:02 p.m., and Irby's attorneys replied at 1:53 p.m., it is unlikely that the attorneys spoke to Irby about the e-mail in the interim. Even if "[d]efense counsel had time to ... consult him regarding excusing some of the jurors if they chose to do so," as the State suggests, Suppl. Br. of Pet'r at 16, "where ... personal presence is necessary in point of law, the record must show the fact." Lewis, 146 U.S. at 372, 13 S.Ct. 136. Significantly, the record here does not evidence the fact that defense counsel spoke to Irby before responding to the trial judge's e-mail. In sum, conducting jury selection in Irby's absence was a violation of his right under the due process clause of the Fourteenth Amendment to the United States Constitution to be present at this critical stage of trial.

B. Article I, Section 22
¶ 17 Unlike the United States Constitution, article I, section 22 of the Washington Constitution provides an explicit guaranty of the right to be present: "In criminal prosecutions *802 the accused shall have the right to appear and defend in person, or by counsel." WASH. CONST. art. I, § 22. Although Irby claims that the trial court violated article I, section 22 in addition to the due process clause of the Fourteenth Amendment, he has not asked this court to interpret article I, section 22 independently. See Suppl. Br. of Resp't at 4. We are nonetheless obliged to examine Irby's state constitutional claim separately because this court has previously interpreted the right to "appear and defend" independently of federal due process jurisprudence.
¶ 18 As early as 1914, this court announced that "[i]t is a constitutional right of the accused in a criminal prosecution to appear and defend in person and by counsel ... at every stage of the trial when his substantial rights may be affected." State v. Shutzler, 82 Wash. 365, 367, 144 P. 284 (1914) (emphasis added).[5] Jury selection is unquestionably a "stage of the trial" at which a defendant's "substantial rights may be affected," and for that reason we do not hesitate in holding that Irby's absence from a portion of jury selection violated his right to "appear and defend in person" under article I, section 22 as well as the due process clause of the Fourteenth Amendment.[6]

C. Harmless Error
¶ 19 A violation of the due process right to be present is subject to harmless error analysis. Rushen, 464 U.S. at 117-18, 104 S.Ct. 453; Benn, 134 Wash.2d at 921, 952 P.2d 116; Lord, 123 Wash.2d at 306-07, 868 P.2d 835. The same can be said of the right to "appear and defend" under article I, section 22. Although this court said in Shutzler that "any denial of the right [to "appear and defend in person"] without the fault of the accused is conclusively presumed to be prejudicial," Shutzler, 82 Wash, at 367, 144 P. 284 (citing State v. Wroth, 15 Wash. 621, 47 P. 106 (1896)), it is clear that in this respect Shutzler is no longer good law. In State v. Caliguri, 99 Wash.2d 501, 664 P.2d 466 (1983), this court overruled Wroth and its progeny, including Shutzler, after noting that "[t]hese older cases," which "recognized a conclusive presumption of prejudice," have been criticized as "not in accord with the modern view." Id. at 508, 664 P.2d 466. We chose to follow instead "the harmless error standard adopted by most jurisdictions." Id. at 509, 664 P.2d 466. As a result, "the burden of proving harmlessness is on the State and it must do so beyond a reasonable doubt." Id.
¶ 20 The State has not met its burden here. We say that because the State has not and cannot show that three of the jurors who were excused in Irby's absence, namely, jurors 7, 17, and 23, had no chance to sit on Irby's jury. Those jurors fell within the range of jurors who ultimately comprised the jury, and their alleged inability to serve was never tested by questioning in Irby's presence. Indeed, they were not questioned at all. While the trial judge said that the court administrator had indicated that jurors 7 and 23 would fulfill their obligation in one week, the record does not establish that they were unable to serve for a longer period if selected. Nor is it self-evident that juror 17 was unable to serve in Irby's case. All that we know from the e-mail exchange is that juror 17 home-schooled his or her child or children and that the trial court considered three weeks' service to be a burden on the juror. Had jurors 7, 17, and 23 appeared on January 3, as they should have, and been subjected to questioning in Irby's presence as planned, the questioning might have revealed that one or more of these potential jurors *803 were not prevented by reasons of hardship from participating on Irby's jury. It is no answer to say that the 12 jurors who ultimately comprised Irby's jury were unobjectionable. Reasonable and dispassionate minds may look at the same evidence and reach a different result. Therefore, the State cannot show beyond a reasonable doubt that the removal of several potential jurors in Irby's absence had no effect on the verdict.

IV. Conclusion
¶ 21 We hold that the trial court violated Irby's rights under the due process clause of the Fourteenth Amendment and article I, section 22 by conducting a portion of jury selection in Irby's absence, and we conclude that the violation of these rights was not harmless beyond a reasonable doubt. In light of our decision, it is unnecessary to decide whether the trial court violated Irby's right to a public trial or erred by concluding that he was a persistent offender.
WE CONCUR: RICHARD B. SANDERS, Justice Pro Tem., TOM CHAMBERS, SUSAN OWENS and DEBRA L. STEPHENS, Justices.
MADSEN, C.J. (dissenting).
¶ 22 The majority treats the routine process used for excusing several potential jurors in this case as a critical stage of a criminal trial. However, a trial court has broad discretion to excuse jurors for a range of valid reasons having nothing to do with the defendant's case. Numerous decisions from the United States Supreme Court, other federal courts, and state courts show that the process of excusing potential jurors for personal reasons such as hardship is distinct from voir dire (when potential jurors are introduced to the substantive legal and factual issues of a defendant's case). We should recognize and give effect to this distinction so that the constitutional right of a defendant to be present at critical stages of the trial is protected while at the same time preserving the trial court's discretion to make administrative decisions.
¶ 23 Moreover, the fact that Terrace Irby was not present while some potential jurors filled out a questionnaire and when the court and counsel discussed whether to release these jurors for reasons not related to this case did not affect Irby's ability to prepare for his defense. A defendant's right to be present at jury selection exists only if his presence would substantially relate to his ability to defend himself. Unfortunately, the majority has not engaged in any meaningful discussion of this requirement and extends constitutional protection where the reason for the constitutional right is in no way furthered by the extension.
¶ 24 Further, to the extent any juror was released for reasons related to the circumstances of Irby's trial, none of these potential jurors sat on Irby's jury. Therefore, if any error occurred in releasing these jurors, it was harmless error.
¶ 25 As discussed below, many courts have addressed a defendant's right to be present under circumstances like the ones in this case. From the United States Supreme Court, other federal courts, and numerous state courts, decisions show that the majority's decision in this case is far afield of what is constitutionally required.

Discussion
¶ 26 Not every aspect of jury selection is a critical stage of criminal proceedings requiring the defendant's presence. Instead, for purposes of determining when the critical stage of selecting a jury occurs, the United States Supreme Court expressly held that voir dire, defined as "the jurors' first introduction to the substantive factual and legal issues in a case," is a critical stage of the proceedings. Gomez v. United States, 490 U.S. 858, 874, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (citations omitted). "Voir dire" as contemplated by the Court for this purpose does not involve every aspect of selecting potential jurors; rather, the Court expressly distinguished "voir dire" from the "administrative empanelment process." Id.
¶ 27 A defendant has the right to be present at voir dire because "[j]ury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's *804 culpability." Id. at 873, 109 S.Ct. 2237 (citations omitted).
¶ 28 In addition, a defendant's due process right to be present arises only when "his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 78 L.Ed. 674 (1934), overruled in part on other grounds sub nom. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
¶ 29 "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (emphasis added). But due process does not compel the defendant's presence when it "would be useless, or the benefit but a shadow." Snyder, 291 U.S. at 106-07, 54 S.Ct. 330. "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. at 107-08, 54 S.Ct. 330 (emphasis added).
¶ 30 Administrative processes that do not involve introduction of the factual and legal issues of the case, and thus are not critical stages of a criminal proceeding, generally include determinations of whether individuals meet statutory qualifications to serve as jurors and determinations of whether personal circumstances not related to the particular case justify excusing an individual, such as hardships specific to the individual. As to the latter, the United States Supreme Court has concluded that "[t]he States are free to grant exemptions from jury service to individuals in case of special hardships or incapacity and to those who engage in particular occupations the uninterrupted performance of which is critical to the community's welfare." Taylor v. Louisiana, 419 U.S. 522, 534, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
¶ 31 In our state, as in other jurisdictions, jury selection begins with a general screening process that eliminates from jury service those who do not meet statutory qualifications. RCW 2.36.070 sets forth basic jury qualifications, which include that the individual is at least 18 years old, a citizen of the United States, a resident of the county in which he or she is to serve, able to communicate in English, and the individual has not been convicted of a felony or not had civil rights restored. Other reasons for excusal are within the trial court's discretion. Under RCW 2.36.100(1), a person may be excused from jury service on a showing of undue hardship, extreme inconvenience, public necessity, prior jury service at least twice in the preceding twelve months, "or any reason deemed sufficient by the court for a period of time the court deems necessary." (Emphasis added.) This law, now set forth in RCW 2.36.100, "vests ... a wide discretion to be exercised in the matter of excusing persons summoned for jury service from the performance of that duty." State v. Ingels, 4 Wash.2d 676, 682-83, 104 P.2d 944 (1940) (emphasis added); accord State v. Rice, 120 Wash.2d 549, 562, 844 P.2d 416 (1993); see State v. Roberts, 142 Wash.2d 471, 518-19, 14 P.3d 713 (2000) (a trial court's decision to excuse members of the jury venire is reviewed under an abuse of discretion standard).
¶ 32 In this case, some of the jurors were released for valid reasons within the discretion of the trial court. Contrary to the majority's conclusion, excusal of these jurors in Irby's absence did not infringe on his right to be present. Cases from other jurisdictions demonstrate the distinction between such administrative processes and voir dire that substantively relate to the defendant's particular case, with no constitutional violation of the right to be present in regard to the administrative processes.
¶ 33 For example, New York's highest court has decided several opinions addressing the right to be present during jury selection that show the difference. In People v. Velasco, 77 N.Y.2d 469, 568 N.Y.S.2d 721, 570 N.E.2d 1070 (1991), prior to formal voir dire the trial court questioned prospective jurors during bench conferences, within the presence of counsel and the defendant, but outside of the defendant's hearing, about matters that might lead to disqualification, such *805 as physical impairments, family obligations, and work commitments. The defendant claimed he was denied the right to be present. The New York Court of Appeals disagreed, saying that "the determination that a prospective juror was disqualified before voir dire was a matter for the court and defendant had no statutory or constitutional right to personally participate in the discussions." Id. at 473, 568 N.Y.S.2d 721, 570 N.E.2d 1070; see also People v. Mulinar, 185 A.D.2d 996, 998, 587 N.Y.S.2d 403 (1992) (following Velasco in a case where prospective jurors were discharged during an informal pre-voir dire phase for reasons relating to their general qualifications to serve as jurors).
¶ 34 In two cases decided the year after Velasco, the New York Court of Appeals expanded the discussion. In People v. Sloan, 79 N.Y.2d 386, 392, 583 N.Y.S.2d 176, 592 N.E.2d 784 (1992), potential jurors were questioned out of the defendants' hearing about their exposure to pretrial publicity and their familiarity with a key prosecution witness, a widely known television newscaster. The court noted that the questioning in Velasco involved matters solely for the court and that a defendant's presence or absence could have no effect on the ultimate fairness of the trial. Sloan, 79 N.Y.2d at 392, 583 N.Y.S.2d 176, 592 N.E.2d 784. In contrast, the questioning in Sloan
went well beyond the matters pertaining to the jurors' general qualifications covered in Velasco and delved into attitudes and feelings concerning some of the events and witnesses involved in the very case to be heard. The effect on the jurors of the pretrial publicity, their attitudes toward and possible predisposition to believe Roland, a key prosecution witness, and their ability to weigh the evidence objectively were subjects properly addressed in a formal voir dire.
Defendants' presence at the questioning on such matters and the resultant opportunity for them to assess the jurors' facial expressions, demeanor and other subliminal responses as well as the manner and tone of their verbal replies so as to detect any indication of bias or hostility, could have been critical in making proper determinations in the important and sensitive matters relating to challenges for cause and peremptories.
Id. Accordingly, the defendants' rights to be present were violated.
¶ 35 In People v. Antommarchi, 80 N.Y.2d 247, 250, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992), the court concluded that when potential jurors are questioned about their backgrounds and ability to weigh the evidence, the defendant must be afforded the right to be present because defendants "are entitled to hear questions intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person's answers so that they have the opportunity to assess the juror's `facial expressions, demeanor and other subliminal responses.'" Id. (quoting Sloan, 79 N.Y.2d at 392, 583 N.Y.S.2d 176, 592 N.E.2d 784).
¶ 36 In Florida, the courts distinguish between a trial court's general qualification of the jury and the qualification of a jury to try the specific case. The former is not a critical stage of the proceeding, the Florida Supreme Court has held. E.g., Wright v. State, 688 So.2d 298, 300-01 (Fla.1996). The general qualification process is used to determine whether jurors meet statutory qualifications and whether they will be unqualified for reasons such as physical disabilities, positions they hold, and other personal reasons. Id. The court has found no violation of the right to be present when general qualifications are addressed without the defendant present. For example, when, with the defendant not present, a judge and counsel discussed and agreed on dismissal of veniremembers for hardship reasons such as prior personal commitments, job conflicts, day care requirements and medical problems, no violation of the right to be present was found. Id.
¶ 37 In contrast, in Muhammad v. State, 782 So.2d 343 (Fla.2001), a capital case, the general qualifications of jurors were not at issue, rather, during voir dire, side bar conferences were held with jurors who wanted to answer questions confidentially. In this way, several potential jurors answered questions about whether their previous experiences with law enforcement officers or the *806 court system would affect their ability to be impartial. Id. at 351. Two jurors were questioned about their views on capital punishment. Id. The defendant was not present at the bench. He argued that the sidebar conferences violated his right to be present.
¶ 38 The Florida Supreme Court agreed. Referring to its earlier decision in Wright, the court drew a distinction between the general qualification process and the process of questioning concerning potential jurors' "ability to serve on this particular jury, for example, whether the jurors had prior experiences with the law enforcement agencies involved in this case." Id. Because the "jurors were being questioned here to determine whether they were competent to serve on this particular jury" it was "a critical stage of the proceeding" and the defendant had a right to be present. Id. at 352 (emphasis added).
¶ 39 In Leffingwell v. State, 747 So.2d 879, 881 (Miss.Ct.App.1999), the appellate court held that the right to be present was not violated during a qualification process where the trial judge questioned prospective jurors about availability to serve, specifically, their ages, ability to read and write, existence of felony convictions, registered voter status, past jury service, present status of any personal case pending in court, employment with the state department of corrections, personal or family illness, and business and financial hardships. The court concluded that at this stage prior to trial, the defendant's presence in the courtroom had no reasonable substantial relation to his opportunity to defend himself against the charge of murder. Id. This reasoning was subsequently confirmed by the Mississippi Supreme Court when it held:
Today we adopt a bright line rule that the trial judge's general questioning of prospective jurors, to ascertain those who are qualified for, or exempt from, jury service is not a critical stage of the criminal proceedings during which a criminal defendant is guaranteed a right to be present. Such statutory matters as whether a prospective juror is a resident of the county, is ill or has an illness in the family, or is over 65 years of age are not matters which necessitate a defendant's presence. A defendant may choose to be present during this part of the proceedings, but has no guaranteed right to be present.
Regardless of whether it is called "impaneling the jury" or "voir dire" or otherwise, the critical stage of jury selection begins at the time when the trial judge and counsel for the parties begin questioning the qualified prospective jurors about such matters as whether they know or are related to the defendant or the attorneys, know or have read about the case, and any other matters specific to the particular case such as opposition to the death penalty or hardship which sequestration might cause.
[The defendant's] right to be present during the critical stages of his trial has not been violated due to his absence, and the partial absence of his attorney, during the qualifying of the prospective jurors.
Davis v. State, 767 So.2d 986, 992 (Miss.2000) (emphasis added).
¶ 40 Key to the analysis in these decisions, it is the particular process of jury selection that is important. Thus, while jury selection involves questioning potential jurors to determine if there are personal reasons why excusal might be appropriate, and not reasons that concern the facts and legal issues in the defendant's case, the right to be present is not violated. But if jurors are being questioned about matters specific to the defendant's case, then the defendant has the right to be present. What is happening is crucial, not when or where it is happening.
¶ 41 Here, the trial court's excusal of prospective jurors 7, 17, 23, 42, 59, and 77 did not implicate Mr. Irby's right to be present.

A. Release of Prospective Jurors 7, 17, 23, 42, 59, and 77
¶ 42 On January 2, 2007, the process of selecting a jury in Mr. Irby's case involved the jurors filling out a questionnaire. At the time, the expectation was that Irby's trial would be lengthy, lasting three weeks.
¶ 43 The trial court sent an e-mail to counsel suggesting that potential jurors 7, 17, 23, 42, 59, and 77 be released for reasons that did not involve the factual and legal issues in Irby's case. Counsel for both sides agreed *807 to the release of these potential jurors. Potential jurors 7, 23, 42, and 59 had been granted a jury service commitment of only a week by the court administrator. Initially, the fact that the court administrator rather than the trial court granted limited jury service to these potential jurors raises no concern. In Rice, the defendant complained that the court failed to follow statutory requirements for jury selection because the clerk, not the judge, excused prospective jurors for hardship and other personal reasons pursuant to detailed procedures and guidelines provided by a judge to the clerk. Rice, 120 Wash.2d at 560-61, 844 P.2d 416. This court concluded that RCW 2.36.100 was not violated because in using the word "court" in the statute the legislature did not express a preference that any particular member of the institutionjudge or clerkperform the duties under RCW 2.36.100. Rice, 120 Wash.2d at 562, 844 P.2d 416. Therefore, the court's act in delegating discretion to excuse jurors, under specific guidelines provided by the court, was permissible. Similarly, in the present case, the court's delegation of discretion to the court administrator to limit the length of jury service was permissible.
¶ 44 The trial court in this case also suggested that potential juror 17 be released because this individual home-schooled and an extended trial would be a hardship, and also suggested that potential juror 77 be released on the basis of a business hardship.
¶ 45 All six of the jurors were released from jury service. However, release of these six potential jurors had nothing to do with defendant Terrance Irby's particular case or factual or legal issues pertaining to it. The reasons for the trial court's release of these jurors are also completely unrelated to the questioning that occurred by way of having these jurors fill out the questionnaire on January 2, 2007, that specifically involved questions related to Irby's case.
¶ 46 As mentioned, the decisions of numerous courts show that no error occurred in release of these jurors. In addition to the United States Supreme Court's analysis in Gomez, and the analyses employed by the New York, Florida, and Mississippi courts set forth above, the cases that follow also demonstrate that no constitutional invalidity results when this routine part of jury selection occurs in the absence of the defendant.
¶ 47 In Soto v. Commonwealth, 139 S.W.3d 827, 852 (Ky.2004), before voir dire began, the judge met with counsel for both sides in chambers to discuss whether six jurors who asserted hardship grounds for being excused should be dismissed. The judge interviewed each of the jurors and excused five of them for hardship reasons. Id. The defendant was not present. The Supreme Court of Kentucky held there was no constitutional error resulting from the defendant's absence, explaining that hardship excusals are within the discretion of the trial court and consultation with the parties or counsel is not required before a hardship excusal occurs. Id.
¶ 48 Similarly, the North Carolina Supreme Court held that the defendant's right to be present at all stages of the trial was not violated when five prospective jurors were justifiably excused (one because he was 93 and suffered from Alzheimer's, one because he was a full-time student who had already served as a juror in several civil cases during that session of court, and three because they were out of the state or country). State v. Cummings, 352 N.C. 600, 612, 536 S.E.2d 36 (2000).
¶ 49 In State v. Martis, 277 Kan. 267, 294-97, 83 P.3d 1216 (2004), 15 jurors were excused without having to come to court on the ground that they would suffer financial hardship; for example some owned one-person businesses and could not maintain their business if they came in and served on a jury and others would not be paid by their employer while on jury duty and would suffer financial hardship. The defendant argued that his Sixth Amendment right to be present was violated by these excusals when the individuals were not required to come to court and be questioned about the veracity of their claims. The Kansas Supreme Court found no violation of the constitutional right to be present. Id. at 297, 83 P.3d 1216.
¶ 50 In Commonwealth v. Barnoski, 418 Mass. 523, 638 N.E.2d 9 (1994), a number of jurors had been granted hardship excusals *808 after a preliminary inquiry at which the defendant was not present. The defendant contended that his right to be present was violated. The Massachusetts Supreme Court disagreed, noting that a trial court has broad discretion in the jury selection process to excuse jurors upon findings of hardship, inconvenience, or public necessity. Id. at 530, 638 N.E.2d 9. The court said that it was "aware of no case that holds a defendant has a constitutional right to be present at preliminary hardship colloquies of members of the jury pool" and cases were to the contrary. Id. The court distinguished "individual, substantive, voir dire" from "[t]he purely administrative determination whether a prospective juror was able to serve without undue hardship," which it found "was not a `critical stage.'" Id. at 531, 638 N.E.2d 9.
¶ 51 Federal courts have drawn the same distinction drawn by state courts. In United States v. Greer, 285 F.3d 158 (2d Cir.2002), the defendants argued that reversible error occurred when the trial court excluded them and their counsel from in camera meetings with jury veniremembers relating to hardship excuses. The court observed that it had already held that routine jury administrative procedures relating to jury selection were "not part of the true jury impanelment process in which the parties and counsel have a right to participate." Id. at 167 (citing United States v. Woodner, 317 F.2d 649 (2d Cir. 1963)). The court explained that "hardship questioning is not a part of voir direand thus is not a critical stage of the trial during which the parties and counsel must be present." Id. at 168. The court also noted that it had upheld the constitutionality of a court's practice of having a jury clerk rather than a trial judge excuse certain veniremembers on hardship grounds. Id. (citing United States v. Williams, 927 F.2d 95, 97 (2d Cir.1991)). The court held that to the extent the district court had addressed routine administrative matters with the jurors, no error occurred when it excluded the parties (the defendants and the prosecution) and counsel from the in camera proceedings.
¶ 52 In Cohen v. Senkowski, 290 F.3d 485, 488-90 (2d Cir.2002), in contrast, the Second Circuit concluded that the defendant's right to be present during critical stages of the proceedings was violated when jurors were prescreened, out of his presence, about their exposure to pretrial publicity of the case, while confirming its holding in Greer that no such violation occurs when prospective jurors are questioned about matters such as personal hardship in serving, i.e., the "administrative empanelment process."
¶ 53 Other federal courts have also found no right to be present during questioning of prospective jurors for hardships reasons unrelated to the substance of the defendant's trial. E.g., Henderson v. Dugger, 925 F.2d 1309, 1316 (11th Cir.1991) (district court's denial of petition for a writ of habeas corpus upheld in capital case; general jury qualification where the trial court was deciding which potential jurors were to be excused for reasons such as hardship or age was not a critical stage of the proceedings at which defendant has a right to be present); United States v. Calaway, 524 F.2d 609, 615-16 (9th Cir. 1975) (finding no constitutional violation where the trial court questioned jurors about hardship outside the presence of the defendants, their counsel, and the court reporter), abrogated on other grounds by Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).
¶ 54 The majority believes, however, that potential jurors 7, 17, 23, 42, 59, and 77 had to be questioned in Irby's presence to establish the truth of their claimed hardships before they could be released. Majority at 802-03. The majority cites no authority for this conclusion and this is not surprising. Nothing in the statutes suggests that a trial court's discretion must be limited in this way. Further, for at least a hundred years it has been the law that doubts about whether a potential juror was rejected on sufficient grounds do not require a new trial unless as a result an unqualified jury was selected. In State v. Phillips, 65 Wash. 324, 327, 118 P. 43 (1911), the defendant contended that the trial court erred in excusing a potential juror due to doubt about the citizenship of a potential juror whom the trial court excused without proof that he was not a United States citizen. This court explained that a defendant has no vested right in having any particular juror sit *809 on his case until the juror is accepted and sworn, and found that the law was satisfied because the defendant was tried by a qualified and impartial jury. Id. In State v. Killen, 39 Wash.App. 416, 693 P.2d 731 (1985), the defendant contended that his right to an impartial jury was denied when the trial court temporarily set aside from the jury selection process the names of three veniremembers who said they had scheduling conflicts with the trial. The defendant did not claim that the jury that sat on his case was biased or otherwise unqualified. The Court of Appeals found no violation of the constitutional right, and no abuse of discretion under RCW 2.36. 100 and Phillips. See also State v. Langford, 67 Wash.App. 572, 837 P.2d 1037 (1992).
¶ 55 Thus, absent some showing that excusing a potential juror resulted in an unqualified or biased jury sitting on his case, Mr. Irby has no reason to complain about the trial court's decision to release potential jurors on grounds that justify excusal in the discretion of the court. He makes no such claim. Identifying these jurors did not result from their answers to the January 2, 2007, questionnaire that related to facts in Irby's case, because none of the questions on that questionnaire concerned the reasons for which these potential jurors were released.
¶ 56 A defendant has no voice in excusals based on hardship and cannot complain unless a biased or unqualified jury results. It must be remembered that the right of a criminal defendant regarding jury selection is "`the right to reject, not to select a juror.'" Howard v. Kentucky, 200 U.S. 164, 174, 26 S.Ct. 189, 50 L.Ed. 421 (1906) (quoting Brown v. New Jersey, 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899)).

B. Release of Prospective Jurors 36, 48, 49, and 53
¶ 57 The trial court also suggested by e-mail on January 2, 2007, that four other potential jurors, numbers 36, 48, 49, and 53, each of whom had a parent who was murdered, be released. The State objected to release of all of these prospective jurors except number 53. Potential juror 36 was released the next day, when Irby was present, for cause.
¶ 58 The reason that the trial court suggested that these potential jurors be released was related to Irby's particular trial. Irby was charged with murder. But as pointed out, the right to be present requires more than this relationship. The right to be present rests on the principle that the defendant's presence "would contribute to the fairness of the procedure," Stincer, 482 U.S. at 745, 107 S.Ct. 2658 (emphasis added), and the defendant's presence is required only to the extent that a fair and just hearing would be thwarted by his absence, Snyder, 291 U.S. at 107-08, 54 S.Ct. 330. It is debatable whether a defendant's presence while potential jurors merely fill out questionnaires would make any difference in the fairness of the procedure.
¶ 59 Nevertheless, the process here went further than jurors filling out forms. The court determined that these jurors should be released on the basis of their answers to the questionnaire and engaged in communications with counsel, which led to the release of potential juror 53. Irby's constitutional right to be present was implicated.
¶ 60 However, any error was harmless. A violation of the right to be present is subject to harmless error analysis. See Benn, 134 Wash.2d at 921, 952 P.2d 116; Lord, 123 Wash.2d at 306-07, 868 P.2d 835; Rushen v. Spain, 464 U.S. 114, 117-18, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); see also United States v. Riddle, 249 F.3d 529, 535 (6th Cir.2001) (right to be present at voir dire is not a structural right the violation of which constitutes per se error; reversal is required only when there is prejudice to the defendant); see, e.g., United States v. Gibbs, 182 F.3d 408, 437 (6th Cir.1999). Accordingly, error is harmless if beyond a reasonable doubt the violation did not contribute to the verdict. Chapman v. California, 386 U.S. 18, 24, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
¶ 61 The only one of these potential jurors who was in a position to be on Irby's jury was potential juror 36, because the jury was filled before the other potential jurors' numbers were reached. Thus, any error as to any of the rest of these jurors was harmless. *810 There is no possibility that the verdict could have been affected by release of jurors who were not in a position to sit on the jury.
¶ 62 Nor was there any error in the release of potential juror 36. On January 3, 2007, when Irby was present, he agreed with the State that juror 36 should be released for cause. Therefore, this juror did not sit on Irby's jury, either.
¶ 63 Indeed, of all of the jurors that the trial court suggested be released in Irby's absence on January 2, 2007, only four, potential jurors 7, 17, and 23, and 36, had a chance of being on Irby's jury because of their low number. The first three of these were, as discussed above, released within the trial court's broad discretion for hardship reasons having nothing to do with the facts or legal issues in Irby's case. The last, as noted, was dismissed for cause the next day by agreement when Irby was present.
¶ 64 Irby claims, though, that he might have wanted potential jurors 7, 17, and 23 on his jury and they may have decided to remain upon questioning in his presence. Irby's speculation that he might have wanted a particular juror on his jury makes no difference in the analysis. First, as this court has long held, a defendant has no right to be tried by a particular juror or jury. State v. Gentry, 125 Wash.2d 570, 615, 888 P.2d 1105 (1995); Phillips, 65 Wash. at 327, 118 P. 43. Second, the release of a potential juror on grounds identified in RCW 2.36.100 is a matter within the trial court's discretion and not a matter for the defendant to decide.
¶ 65 Finally, if an impartial jury is obtained, no reversible error occurs in any event. See Phillips, 65 Wash. 324, 118 P. 43; Howard, 200 U.S. at 174, 26 S.Ct. 189 (quoting Brown, 175 U.S. at 172, 20 S.Ct. 77) ("`[i]f from those who remain an impartial jury is obtained, the constitutional right of the accused is maintained'"); Nguyen v. Archuleta, No. CIVA07CV00702WYDBNB, 2008 WL 4079300, at *10 (D.Colo. Aug. 25, 2008) (unpublished) (applicant for a writ of habeas corpus argued that his right to be present was violated because he was absent from a portion of voir dire of two prospective jurors held in chambers; district court agreed any error was harmless because the prospective jurors did not serve on the jury at the defendant's trial; court observed that the defendant's "speculation that he may not have wanted those jurors excused does not demonstrate that his presence during voir dire would have contributed to the fairness of the proceedings"), aff'd, 369 Fed.Appx. 889 (10th Cir.2010) (unpublished).

Conclusion
¶ 66 I would hold that the trial court's excusal of potential jurors for hardship reasons having nothing to do with the factual or legal issues in Irby's case, did not implicate Mr. Irby's right to be present at critical stages of his criminal proceedings. First, these releases were part of an administrative process involving jury selection at which the right to be present does not arise. Second, Irby's presence could have made no difference in his ability to defend because release of jurors for hardship reasons is a matter solely within the discretion of the trial court, and Irby's presence would have made no difference.
¶ 67 I would also hold that no reversible error resulted with regard to potential jurors who were released on the ground that the jurors' parents had been murdered. In the end the only one of these jurors in a position to sit on the jury, number 36, was dismissed in Irby's presence and with his consent.
¶ 68 In fact, as to all of the potential jurors that the court recommended in the e-mail be released, only four had a chance of sitting on Irby's jury, numbers 7, 17, 23, and 36. The first three were validly excused for hardship. The final number was of an individual that Irby agreed should be dismissed for cause.
¶ 69 I dissent from the majority's decision that reversible error occurred when these jurors were released from jury service.
WE CONCUR: JAMES M. JOHNSON, CHARLES W. JOHNSON, MARY E. FAIRHURST, Justices.
NOTES
[1] Juror 3 was actually juror 7, the judge correcting himself at 2:01 p.m. as follows: "Oops. 7 goes, not 3. OK?" Id.
[2] The transcript says juror 46, but the clerk's minutes read juror 36 at multiple locations.
[3] Irby conceded this issue at the Court of Appeals. See Reply Br. of Appellant at 14.
[4] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.
[5] Article I, section 22 originally provided that "the accused shall have the right to appear and defend in person, and by counsel." It was amended in 1921. LAWS OF 1921, ch. 13, § 1.
[6] The right under the state constitution to "appear and defend" is, arguably, broader than the federal due process right to be present. Unlike Snyder, our decision in Shutzler does not condition the right to "appear and defend" at a particular "stage of trial" on what a defendant might do or gain by attending, see Snyder, 291 U.S. at 108, 54 S.Ct. 330 ("There is nothing he could do if he were there, and almost nothing he could gain."), or the extent to which the defendant's presence may have aided his defense, see id. at 113, 54 S.Ct. 330 ("No one can ... have even a passing thought that the presence of Snyder would have been an aid to his defense."), but rather on the chance that a defendant's "substantial rights may be affected" at that stage of trial.