

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69449-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| COREY ALEXANDER SCHUMACHER, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 6, 2015 |
| | ) | |

LEACH, J. — Corey Schumacher appeals jury convictions on two counts of child molestation in the first degree and one count of child molestation in the second degree. He assigns error to the trial court's failure to enter written findings and conclusions following a CrR 3.5 hearing and contends that a sidebar conference about prospective jurors' hardship claims violated his right to a public trial and right to be present. In a statement of additional grounds for review, he makes a number of other claims. Because Schumacher shows no prejudice from the trial court's delay in entering written findings, establishes no violation of his right to a public trial or right to be present, and makes no valid claim in his statement of additional grounds, we affirm.

## FACTS

The State charged Corey Schumacher by amended information with three counts of molestation of a child in the first degree and two counts of molestation

of a child in the second degree. The State dismissed one of the second degree child molestation counts during the course of trial.

Following a May 24, 2012, pretrial CrR 3.5 hearing, the court made oral findings of fact and conclusions of law and admitted Schumacher's custodial statements to two detectives. The court did not enter written findings until after Schumacher filed this appeal.

On May 31, 2012, the trial court swore in a panel of prospective jurors and announced the charges against Schumacher. The court then explained that the trial could last two weeks and, after defining "hardship" for jury service purposes, asked potential jurors who claimed hardship to state their reasons. These prospective jurors did so on the record in open court. After the court asked the panel to leave the courtroom temporarily, the court and counsel discussed the hardship claims on the record. The court excused some jurors and reserved ruling on others pending further questioning. Concerned that not enough jurors remained on the panel, the court requested a second group of prospective jurors.

Before bringing in the prospective jurors that afternoon, the judge told the parties that to facilitate completion of jury orientation by the end of the day, he wished to conduct their discussion of the second panel's hardship claims in a sidebar. The court clarified, presumably for defense counsel, "I will give you a

chance to speak to your client so you can discuss any hardships before I make any final decisions."

The court swore in the new group of prospective jurors and explained the charges and the hardship screening process. Prospective jurors from the second panel explained their hardship claims in open court. The court then told the jurors, "All right. I am going to talk to the lawyers over here, and if you want to stand and stretch or talk amongst yourselves, you certainly may. I will be right back." The court and counsel then conducted an unrecorded sidebar discussion, after which the court excused seven prospective jurors on the record. The court asked the remaining members of the second panel to go downstairs briefly.[1] Once the panel had left the courtroom, the judge described the sidebar for the record:

> We had a side-bar, and there was no disagreement on the people excused. We did agree to let number 70 go, and I did not. And I will tell counsel now that the reason that I didn't is it seemed to me to be unfair to keep 61 and let 70 go. Really the same rationale we are talking about there with people for work, but I may excuse him eventually, number 70.
>
> I also asked [defense counsel] if he wanted any additional time to talk to his client, and he did not.

---

[1] The court gave this instruction only to the venire, not to anyone else in the courtroom.

Neither party made any objection to the hardship excusals. When the prospective jurors returned, the judge conducted an orientation and began voir dire.[2]

A jury found Schumacher guilty of two counts of child molestation in the first degree and one count of child molestation in the second degree but was unable to reach a verdict on one of the first degree counts. Schumacher timely appealed, filing his opening brief in this court on May 8, 2013.

On June 25, 2013, the trial court entered findings of fact and conclusions of law on the CrR 3.5 motion to suppress defendant's statements.

ANALYSIS

CrR 3.5 Findings

In his opening brief, Schumacher asked this court to remand this case to the trial court for entry of written findings of fact and conclusions of law for the CrR 3.5 hearing. CrR 3.5(c) requires the trial court to make a written record: "After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." Failure to

---

[2] If prospective jurors had indicated on a jury questionnaire that they did not wish to discuss a sensitive matter in public, the parties and the court interviewed them individually in open court and on the record, outside the presence of the rest of the panel. Once the parties finished this individual questioning, voir dire examination of the whole panel continued in open court.

enter written findings is error, but any error is harmless where oral findings are sufficient to allow appellate review.[3]

Here, Schumacher does not challenge the court's decision to admit the statements.[4] Nor does he allege that the court "tailored" its written findings to meet an issue presented on appeal.[5] The trial court's oral ruling sets forth the court's reasons for its decision and is sufficient to permit appellate review of the merits of the decision. In this case, the court ultimately entered written findings. Those findings, although delayed, contain no disputed facts, are consistent with the court's oral ruling, and support the court's decision. Schumacher does not show that any prejudice resulted from the court's delay. We affirm the trial court's ruling.

Right to a Public Trial

In a supplemental brief,[6] Schumacher contends that the trial court violated his right to a public trial by conducting a sidebar discussion about hardship

---

[3] State v. Cunningham, 116 Wn. App. 219, 226, 65 P.3d 325 (2003).

[4] In his statement of additional grounds for review, Schumacher makes reference to the audio evidence and makes one claim contingent on this court's determination that the trial court improperly admitted it. But he does not argue or cite authority for such a claim of improper admission.

[5] See State v. Smith, 68 Wn. App. 201, 209-10, 842 P.2d 494 (1992) (when reviewing court remands for entry of findings after appellant files opening brief, court must examine any claim that court tailored findings in response to the defendant's appeal).

[6] In the motion to file supplemental brief filed with this court, defense counsel noted that it did not receive a transcript of the verbatim report of jury selection proceedings until June 13, 2013. Therefore, defense identified

excusals. An alleged violation of the right to a public trial presents a question of law this court reviews de novo.[7] The Washington and United States Constitutions guarantee the right of a criminal defendant to a public trial.[8] Article I, section 10 of the Washington Constitution contains an additional guaranty of open court proceedings: "Justice in all cases shall be administered openly, and without unnecessary delay." There is a strong presumption that courts are to be open at all stages of trial.[9] The right to a public trial extends to the voir dire of prospective jurors.[10]

A party who proposes closure of a proceeding must show "an overriding interest based on findings that closure is essential to preserve higher values and narrowly tailored to serve that interest."[11] In State v. Bone-Club, the Washington Supreme Court set forth a five-factor test courts must use to evaluate the constitutionality of a proposed closure.[12] Our Supreme Court has held that a

---

additional meritorious issues one month after it had filed the appellant's opening brief.

[7] State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

[8] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."); WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, . . . [and] to have a speedy public trial by an impartial jury.").

[9] Sublett, 176 Wn.2d at 70.

[10] Presley v. Georgia, 558 U.S. 209, 213, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010); State v. Wise, 176 Wn.2d 1, 11, 288 P.3d 1113 (2012).

[11] State v. Momah, 167 Wn.2d 140, 148, 217 P.3d 321 (2009); see also Waller v. Georgia, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

[12] In Bone-Club, the court held that a court must consider the following

public trial claim may be raised for the first time on appeal[13] and that a violation is generally a structural error requiring reversal.[14]

"But not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public."[15] Before deciding if a trial court violated a defendant's right to a public trial, a reviewing court must determine if "the proceeding at issue implicates the public trial right, thereby constituting a closure at all."[16] In State v. Sublett,[17] the court adopted the "experience and logic" test articulated by the United States Supreme

---

factors on the record:

> "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
> "2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> "3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> "4. The court must weigh the competing interests of the proponent of closure and the public.
> "5. The order must be no broader in its application or duration than necessary to serve its purpose."

128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (alteration in original) (quoting Allied Daily Newspapers v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[13] State v. Njonge, 181 Wn.2d 546, 554, 334 P.3d 1068, cert. denied, 135 S. Ct. 880 (2014); Wise, 176 Wn.2d at 15-16.

[14] Njonge, 184 Wn.2d at 554; Wise, 176 Wn.2d at 13-14, State v. Paumier, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012).

[15] Sublett, 176 Wn.2d at 71.

[16] Sublett, 176 Wn.2d at 71; see also State v. Beskurt, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013).

[17] 176 Wn.2d 58, 72-75, 292 P.3d 715 (2012).

Court in <u>Press-Enterprise Co. v. Superior Court</u>[18] to determine if a particular process must remain open to the public absent a <u>Bone-Club</u> analysis. The "experience" prong of this test asks "'whether the place and process have historically been open to the press and general public.'"[19] "The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'"[20] If the answer to both questions is yes, the public trial right attaches, and the trial court must apply the <u>Bone-Club</u> factors on the record before closing the proceeding to the public.[21]

Here, two proceedings potentially implicate the public trial right: the sidebar conference and the "closed" discussion of hardship excusals that occurred during the sidebar. We hold that neither proceeding implicated Schumacher's right to a public trial and, therefore, there was no closure and no violation.

<u>Sidebar</u>

When the parties briefed the public trial issue, our Supreme Court had not yet decided <u>State v. Smith</u>,[22] where the defendant challenged a number of on-

---

[18] 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (<u>Press</u> II).
[19] <u>Sublett</u>, 176 Wn.2d at 73 (quoting <u>Press</u> II, 478 U.S. at 8).
[20] <u>Sublett</u>, 176 Wn.2d at 73 (quoting <u>Press</u> II, 478 U.S. at 8).
[21] <u>Sublett</u>, 176 Wn.2d at 73.
[22] 181 Wn.2d 508, 334 P.3d 1049 (2014).

the-record sidebar conferences as violations of his right to a public trial. <u>Smith</u> controls the outcome here.

Applying the experience and logic test in that case, the court held that traditional sidebars do not implicate the right to a public trial.[23] Addressing the experience element, the court noted that sidebar conferences "have historically occurred outside the view of the public."[24] As for the logic prong, the court found "no specific interest that is served by ensuring that the public is privy to a sidebar."[25] Rather, the court found more persuasive reasons in favor of deciding that the public trial right does not attach. The court noted, for example, the practical considerations involved in interrupting trial to dismiss the jury every time the court wishes to admonish or hear an objection from counsel. The court concluded, "[R]ulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness."[26]

The court arrived at this holding even though many of the sidebars at issue in <u>Smith</u> involved legal questions about admissibility of evidence and testimony.[27] Schumacher's case is less complex. Here, the sidebar conference

---

[23] <u>Smith</u>, 181 Wn.2d at 511.
[24] <u>Smith</u>, 181 Wn.2d at 515.
[25] <u>Smith</u>, 181 Wn.2d at 518.
[26] <u>Smith</u>, 181 Wn.2d at 518 (citing <u>Sublett</u>, 176 Wn.2d at 77).
[27] Two sharply dissenting justices noted that these "important and substantive" rulings by the court "almost certainly affected the outcome" and

involved an essentially administrative matter: excusals of prospective jurors for hardship reasons unrelated to the substantive facts of Schumacher's case. Moreover, although no contemporaneous record of the sidebar was made, the trial court "promptly memorialized in the record" the contents of the discussion and its ruling, as the court mandated in Smith.[28] And prospective jurors explained their hardship claims in open court. We hold that the sidebar discussion did not violate Schumacher's right to a public trial.

<u>Hardship Excusals</u>

Although our conclusion that the sidebar discussion did not implicate Schumacher's right to a public trial resolves this issue, we will also address Schumacher's contention that a "closed" discussion about hardship excusals violated his public trial right. We conclude that no violation occurred.

Though our Supreme Court has not decided if the public trial right generally attaches to the hardship excusal phase of jury selection,[29] in the

---

"helped shape the course of the trial." Smith, 181 Wn.2d at 527 (Wiggins, J., dissenting), 538 (Owens, J., dissenting).

[28] Smith, 181 Wn.2d at 516 n.10.

[29] Although the court in Njonge noted that it granted review of the issue of "whether the portion of jury selection in which the court excuses jurors for hardship is a proceeding to which the public trial right attaches," the court decided the case more narrowly, holding only that the record of Njonge's trial did not show any closure of voir dire. Njonge, 181 Wn.2d at 548-49, 557. State v. Wilson, 174 Wn. App. 328, 298 P.3d 148 (2013), petition for review filed, No. 88818-3 (Wash. May 16, 2013), which this court recently followed in an unpublished decision, State v. McClure, 2014 WL 6438467 (Wash. Ct. App. Nov. 17, 2014), more directly addresses the issue here.

factually similar State v. Wilson,[30] Division Two of this court held that it does not. In Wilson, the defendant challenged the bailiff's administrative excusal of two ill jurors before voir dire began. Addressing Wilson's argument that hardship excusals were part of the "jury selection" process implicating the right to a public trial, Division Two distinguished between the broader "entire jury selection process," which includes "the initial summons and administrative culling of prospective jurors from the general adult public," from "the narrower, voir dire component," which entails the examination of prospective jurors to determine their qualifications to serve on this particular case.[31]

Schumacher attempts to distinguish Wilson. He emphasizes that while the bailiff in Wilson dismissed the ill jurors before any questioning about hardship or bias had occurred, in his case the prospective jurors had already filled out a case-specific questionnaire, been sworn in, and answered questions in the courtroom. He argues, "Whatever line exists between administrative excusals carried out by a clerk and the voir dire process, Schumacher's case falls firmly on the side of voir dire."

We disagree. Here, the record demonstrates that the basis for all the excusals following the sidebar was personal hardship unrelated to Schumacher's

---

[30] 174 Wn. App. 328, 333, 298 P.3d 148 (2013), petition for review filed, No. 88818-3 (Wash. May 16, 2013).
[31] Wilson, 174 Wn. App. at 338.

case. Because no juror was excused for cause, with a peremptory challenge, or because of an answer on the questionnaire, Schumacher's distinction describes no difference of any consequence.

Statutes, court rules, and case law all support this conclusion. RCW 2.36.100 gives discretion to both the court and the "court's designee" to excuse jurors for hardship. Our Supreme Court has consistently held that this statute permits a trial court to delegate administrative juror excusals to court clerks or other agents, as long as such excusals are not for case-specific reasons.[32]

Court rules also distinguish general screening from case-specific voir dire examination. CrR 6.3, entitled "Selecting the Jury," provides that "jurors shall be selected at random from the jurors summoned who have appeared and have not been excused." CrR 6.4, "Challenges," provides that "voir dire examination shall be conducted for the purpose of discovering any basis for challenge for cause and for the purpose of gaining knowledge to enable an intelligent exercise of peremptory challenges."[33] This phase entails the judge and counsel asking the prospective jurors "questions touching their qualifications to serve as jurors in the case, subject to the supervision of the court as appropriate to the facts of the case."[34]

---

[32] See, e.g., In re Pers. Restraint of Yates, 177 Wn.2d 1, 21-22, 296 P.3d 872 (2013); State v. Rice, 120 Wn.2d 549, 561, 844 P.2d 416 (1993).
[33] CrR 6.4(b).
[34] CrR 6.4(b).

In Wilson, Division Two noted that our Supreme Court has often used the terms "jury selection and "voir dire" interchangeably in the public trial context.[35] But our Supreme Court's public trial cases, as well as cases the court cites for support, are consistent with Wilson's analysis. Where the court has found an impermissible closure in the context of jury selection, the closure has involved the substantive voir dire phase, not excusals purely for hardship or other non-case-specific reasons, regardless of the name the court has given the proceeding.[36]

To make this distinction is not to resort to the "legal-factual" test our Supreme Court rejected in Sublett.[37] Rather, this analysis usefully distinguishes

---

[35] Wilson, 174 Wn. App. at 338-39 (citing Paumier, 176 Wn.2d at 34-35; Wise, 176 Wn.2d at 12 n.4; State v. Brightman, 155 Wn.2d 506, 515, 122 P.3d 150 (2005)); see also Njonge, 181 Wn.2d at 557 (deciding if courtroom was closed "during voir dire" or "during the first stages of voir dire").

[36] See, e.g., Presley, 558 U.S. at 214 (impermissible to exclude public from voir dire without considering alternatives to closure); Wise, 176 Wn.2d at 6-7 (partial voir dire in chambers included case-specific questioning); Paumier, 176 Wn.2d at 32-33 (same); In re Pers. Restraint of Morris, 176 Wn.2d 157, 162, 288 P.3d 1140 (2012) (same); State v. Strode, 167 Wn.2d 222, 223-24, 217 P.3d 310 (2009) (same); Brightman, 155 Wn.2d at 509 (courtroom closed to public during jury selection); In re Pers. Restraint of Orange, 152 Wn.2d 795, 799-800, 100 P.3d 291 (2004) (same); see also Sublett, 176 Wn.2d at 72-73 ("[R]esolution of whether the public trial right attaches to a particular proceeding cannot be resolved based on the label given to the proceeding.").

[37] Sublett, 176 Wn.2d at 72 ("We decline to draw the line with legal and ministerial issues on one side, and the resolution of disputed facts and other adversarial proceedings on the other. The resolution of legal issues is quite often accomplished during an adversarial proceeding, and disputed facts are sometimes resolved by stipulation following informal conferencing between counsel."); see also Smith, 181 Wn.2d at 514 (observing that in Sublett, the court

between discretionary administrative proceedings not touching on the defendant's rights or specific case on the one hand and adversarial proceedings directly relating to those rights and that case on the other. Here, the trial court's hardship excusals constituted the former and not the latter.[38] We hold that no violation of Schumacher's right to a public trial occurred.

Right To Be Present

Schumacher also argues that the sidebar conference violated his constitutional right to be present. We disagree.

The Washington and United States Constitutions guarantee a criminal defendant's "fundamental right to be present at all critical stages of a trial."[39] This due process right extends to voir dire.[40] This court reviews de novo a claimed

---

"rejected the old legal-factual distinction in favor of the experience and logic test to determine whether the proceeding at issue implicates the public trial right").

[38] As the State points out, supporting this conclusion are decisions by all three divisions of the Court of Appeals holding that even the exercise of peremptory and for-cause challenges at sidebar or in writing does not implicate the right to a public trial, provided the court makes a record. See, e.g., State v. Filitaula, ___Wn. App.___, 339 P.3d 221 (2014), petition for review filed, No. 91192-4 (Wash. Jan. 9, 2015); State v. Marks, ___ Wn. App.___, 339 P.3d 196 (2014), petition for review filed, No. 91148-7 (Wash. Dec. 29, 2014); State v. Webb, 183 Wn. App. 242, 333 P.3d 470 (2014), review denied, 182 Wn.2d 1005 (2015); State v. Dunn, 180 Wn. App. 570, 321 P.3d 1283 (2014), review denied, 181 Wn.2d 1030 (2015); State v. Love, 176 Wn. App. 911, 309 P.3d 1209 (2013), review granted, 181 Wn.2d 1029 (2015). In Schumacher's case, the excusals occurred before the parties had begun substantive voir dire examination and thus before the exercise of any challenges.

[39] State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

[40] Irby, 170 Wn.2d at 883.

violation of the constitutional right to be present, using a harmless error analysis.[41]

Like the right to a public trial, however, the right to be present is not absolute; "'the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'"[42] A defendant has a right to be present "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"[43]

In State v. Irby,[44] our Supreme Court distinguished pre-voir dire administrative excusals on the basis of general qualifications from "'individual, substantive voir dire'" conducted to test jurors' qualifications to serve on a particular case. In Irby, after prospective jurors completed a questionnaire, the court and counsel discussed dismissing certain jurors in an e-mail conversation.[45] Irby was in custody and did not participate.[46] Our Supreme

---

[41] Irby, 170 Wn.2d at 880. The harmless error standard also applies to a claimed violation of the right to "appear and defend" under art. I, § 22 of the Washington Constitution. Irby, 170 Wn.2d at 885-86.

[42] Irby, 170 Wn.2d at 881 (quoting Snyder v. Massachusetts, 291 U.S. 97, 107-08, 54 S. Ct. 330, 78 L. Ed. 674 (1934), overruled in part on other grounds sub nom. Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)).

[43] Irby, 170 Wn.2d at 881 (quoting Snyder, 291 U.S. at 105-06).

[44] 170 Wn.2d 874, 882, 246 P.3d 796 (2011) (citing Commonwealth v. Barnoski, 418 Mass. 523, 530, 531, 638 N.E.2d 9 (1994) (distinguishing "preliminary hardship colloquies" from "individual, substantive voir dire")).

[45] Irby, 170 Wn.2d at 877-78.

[46] Irby, 170 Wn.2d at 878.

Court noted that while the trial court subsequently dismissed some jurors for hardship reasons, it dismissed others for cause.[47] The court held that the e-mail exchange constituted a phase of jury selection that Irby had a right to attend and that the trial court violated his right to be present by excusing jurors for cause in his absence.[48]

Citing Irby, Schumacher argues "the trial court unconstitutionally took hardship challenges in [his] absence." Unlike Irby, who showed that some of the discussion and subsequent excusals for cause were a critical stage of his trial, Schumacher does not establish that his absence from a sidebar conference finalizing dismissals for general hardship hindered his opportunity to defend against the charges. And although Schumacher may not have participated in the sidebar discussion, unlike the court in Irby, the court did not exclude Schumacher from the hardship excusal process. He heard prospective jurors' hardship claims in open court and had the opportunity to consult with his attorney before the court made any decision or excused any juror. Because the sidebar was not a stage of trial affecting Schumacher's substantial rights and he had the opportunity to participate in the decision that followed the sidebar discussion, no violation of Schumacher's right to be present occurred.

---

[47] Irby, 170 Wn.2d at 882, 884.
[48] Irby, 170 Wn.2d at 882-84.

-16-

Statement of Additional Grounds for Review

In a statement of additional grounds for review, Schumacher makes a number of meritless claims. First, he claims a sentencing error, noting that he received a determinate sentence because he was under 18 years old at the time of the alleged crimes but that the earliest date of one charge was 14 months past his eighteenth birthday. But because the court in its discretion ordered a determinate sentence at the low end of the standard range rather than a longer indeterminate sentence, which it had the authority to impose for these felony sex offenses, any misunderstanding about Schumacher's age worked in his favor. Schumacher does not state a claim for relief.

Next, Schumacher claims vindictive prosecution, alleging that the State's addition of charges after he rejected a plea agreement "has the appearance of 'Stacking the Deck,'" and that it "could lead the jury to believe he must be guilty if he has so many charges against him." We reject this claim. Washington courts have held that increased charges after a defendant refuses to plead guilty do not, without more, raise a presumption of vindictiveness.[49] Schumacher does not cite to the record, offer authority, or otherwise support his assertion.

---

[49] State v. Korum, 157 Wn.2d 614, 631, 141 P.3d 13 (2006); State v. Bonisisio, 92 Wn. App. 783, 790-92, 964 P.2d 1222 (1998) (no vindictiveness when State charged 10 additional counts after defendant rejected plea agreement).

Schumacher also makes several allegations of ineffective assistance, assigning error to defense counsel's (1) decision to seek a continuance, (2) failure to investigate a "timeline of where the defendant was in the summer months between 2006 and 2010," (3) failure to call Schumacher's mother as a witness, and (4) failure to object to the admission of the audio evidence of the conversation between Schumacher and a detective. To establish a claim of ineffective assistance, Schumacher must show both deficient performance, i.e., that counsel's performance fell below an objective standard of reasonableness, and resulting prejudice.[50] "There is a strong presumption that defense counsel's conduct is not deficient."[51] Failure on either prong of the test defeats an ineffective assistance claim.[52] The decision about whether to investigate, call a particular witness, or present certain evidence is a matter of legitimate trial strategy and tactics and usually cannot support an ineffective assistance claim.[53] Here, Schumacher does not overcome the presumption that his counsel was effective, and his claims fail.

---

[50] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[51] Reichenbach, 153 Wn.2d at 130 (citing McFarland, 127 Wn.2d at 335).

[52] Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[53] In re Pers. Restraint of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004); State v. Aho, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); State v. Benn, 120 Wn.2d 631, 665, 845 P.2d 289 (1993) (decision not to investigate particular matter was strategic, not negligent).

Next, Schumacher asserts that if this court were to decide that the trial court improperly admitted the audio evidence, this would prove a claim for retroactive misjoinder. This claim also fails. Retroactive misjoinder "arises where joinder of multiple counts was proper initially, but later developments—such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions—render the initial joinder improper.'"[54] Here, Schumacher does not show that the court improperly admitted the audio evidence and offers no argument about how retroactive misjoinder applies.[55]

Finally, Schumacher alleges cumulative error: that the issues he raises "taken as a whole [have] the appearance of unfairness." Under the cumulative error doctrine, a combination of errors may deny the accused a fair trial even where any one of the errors viewed individually may not justify reversal.[56] Because Schumacher fails to show any error, the cumulative error doctrine does not apply.

---

[54] United States v. Lazarenko, 564 F.3d 1026, 1043 (9th Cir. 2009) (internal quotation marks omitted) (quoting United States v. Vebeliunas, 76 F.3d 1283, 1293-94 (2d Cir. 1996)).

[55] See RAP 10.3(a)(4), (6); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (declining to consider an inadequately briefed argument).

[56] Yates, 177 Wn.2d at 65-66.

## CONCLUSION

Because Schumacher shows no prejudice from the trial court's delay in entering written findings, establishes no violation of his right to a public trial or right to be present, and makes no valid claim in his statement of additional grounds, we affirm.

_Leach, J._

WE CONCUR:

_Appelwick, J._